McCord v. Robinson.

5-956                                                289 S. W. 2d 893

Opinion delivered May 7, 1956.

*French & Camp,* for appellant.

*Westbrooke & Westbrooke,* for appellee.

MINOR W. MILLWEE, Associate Justice. Appellee, Mildred Robinson, is the youngest child of A. A. and Ella Armstrong, who are now deceased. Appellants, who are the other children and heirs of said decedents, brought this suit to set aside a deed from the parents to appellee on the ground that it was never delivered. On a former appeal, we held the trial court erred in sustaining appellee's motion to dismiss at the conclusion of appellants' testimony and the cause was remanded for further proceedings and final determination of the question whether there had been a sufficient delivery of the deed to appellee. *McCord v. Robinson,* 225 Ark. 177, 280 S. W. 2d 222. On remand, the cause was submitted on the testimony adduced at the first hearing plus additional proof offered by the parties. The instant appeal is from a decree finding the proof insufficient to sustain appellants' allegation of nondelivery of the deed and dismissing the complaint for want of equity.

. . Appellee resided with her parents on the forty acres in controversy in 1934 when Mr. Armstrong became involved in a foreclosure proceeding against another tract he then owned. He became apprehensive that a possible deficiency judgment in that suit might eventually jeopardize his interests in the home place. After consulting counsel, he and Mrs. Armstrong, on July 21, 1934, executed a general warranty deed of the forty-acre homestead to appellee, reserving a life estate to the grantors. Appellee continued to reside with her parents, while three older daughters married and moved to homes of their own.

Appellee testified that on the date of the execution of the deed her father handed it to her and said, "Sis, this is for you and don't record it until my death, but upon my death, you get the deed on record . . . Furthermore, you are going to have to take care of it." Appellee placed the deed in her mother's trunk, where she and her parents kept other valuable papers. The deed remained in the trunk, which was accessible to appellee and her parents, until May 5, 1943, when appellee had it recorded because she was afraid it might be destroyed after a threat to that effect by a brother-in-law. Appellee's mother acquiesced in the recording of the deed. While the deed was recorded without the prior consent of her father, the latter told appellee to "just let it be, just like it is," after she explained why the deed was recorded, shortly after it was done. Appellee returned the deed to the trunk after it was recorded.

After A. A. Armstrong's death, on July 8, 1944, each of his other three daughters was given $500 from proceeds of the sale of another tract which he owned, but appellee was given none of said proceeds because she was getting the home place. Appellee continued to reside with and care for her mother until the latter's death in April 1954. A small amount of personal property, left by Mrs. Armstrong, was divided equally between the two other sisters who survived their mother and appellee received none of it.

Several neighbors of the Armstrongs, who were not related and were apparently disinterested witnesses, testified to statements repeatedly made by A. A. and Ella Armstrong before and after the recording of the deed to the effect that they had deeded the forty acres to appellee and intended for her to have the place and that it was not for sale for that reason.

Opposed to the foregoing evidence was that of appellants and some close relatives to the effect that they had heard A. A. Armstrong on different occasions direct that the deed be procured from "his box" or "his drawer" and read to him; that he repeatedly stated the deed was to remain there and admonished appellee and others that it was not to be recorded; and that he became angry and threatened to have the deed "taken off the record" upon learning that it had been recorded. There was no proof of any effort to carry out such threat or to destroy the deed which remained in the trunk for nearly a year prior to his death and after he learned it had been recorded.

For reversal appellants argue there was no delivery of the deed which remained at all times in the possession and under the dominion of the grantors; and that the evidence adduced by appellants was sufficiently clear and decisive to rebut any presumption of delivery arising from the recording of the deed. We cannot agree with these contentions. On the former appeal, we cited numerous decisions which set forth the applicable rules for determining whether there has been a delivery of a deed. The rule is stated in *Graham* v. *Suddeth,* 97 Ark. 283, 133 S. W. 1033, as follows: "A deed is defined to be 'a written instrument signed, sealed and delivered'; and it is essential to the validity of a deed that there should be a delivery of the instrument. But in order to constitute a sufficient delivery thereof it is not necessary that there should be an actual manual transfer thereof to the grantee or a formal acceptance thereof by him. The question of a delivery of a deed is largely one of intent; and if it clearly appears from the words or acts of the grantor that it was his intention to treat the instrument as his deed and to make a disposal thereof, indicating that it

should be effective, then the delivery is sufficient. As is said in the case of *Russell* v. *May,* 77 Ark. 89: 'Any disposal of a deed, accompanied by acts, words or circumstances which clearly indicate that the grantor intends that it shall take effect as a conveyance, is a sufficient delivery.'

''The registration of a deed raises a presumption of the delivery to and acceptance by the grantee thereof. It is evidence of a most cogent character tending to show delivery. It is a solemn proclamation to the world that there has been a transfer of the title to the property from the grantor to the grantee, of which our law makes everyone take notice. 1 Devlin on Deeds, § 392; 13 Cyc. 567; *Hedge* v. *Drew,* 12 Pick. 141; *Robbins* v. *Rascoe,* 120 N. C. 79; *Snider* v. *Lackenour,* 38 Am. Dec. 685.

''A deed signed, acknowledged and recorded, is complete and valid, although there is no evidence of a formal delivery thereof; and the presumption of delivery arising therefrom can only be overcome by clear and decisive proof that the grantor did not part and did not intend to part with the possession of the deed. The weight of authority is that a deed, thus executed and recorded, is valid and effective to pass title, although retained by the grantor in his possession. There mere fact of his retaining it in his possession is not sufficient to show that it was not intended to be absolute. *Adams* v. *Adams,* 88 U. S. 185.''

In *Battle* v. *Anders,* 100 Ark. 427, 140 S. W. 593, this court said: ''The important question in determining whether there has been a delivery is the intent of the grantor that the instrument should pass out of his control and operate as a conveyance. The intent of the grantor is to be inferred from all the facts and circumstances adduced in the evidence. His acts and conduct are to be regarded in ascertaining his intent.'' See also *Faulkner* v. *Feazel,* 113 Ark. 289, 168 S. W. 568.

We think a preponderance of the evidence supports the chancellor's finding that appellants failed to meet the

burden of showing nondelivery of the deed in question. In our opinion, a preponderance of the evidence clearly indicates that there was a manual transfer of the deed to appellee with the intention of the grantors that it pass out of their control and operate as a conveyance. Nor do we agree with the further contention that the instrument in question is merely an "insurance deed" which was prematurely recorded without the consent of the grantors. In *Cavett* v. *Pettigrew,* 182 Ark. 806, 32 S. W. 2d 808, cited in support of this contention, there was an effort to establish a lost deed which was never to be recorded at all and was only to become effective upon an eventuality which never happened.

In the recent case of *Lindsey* v. *Christian,* 222 Ark. 169, 257 S. W. 2d 935, we said: "We have held in a long line of cases, some of which are reviewed in *Smith* v. *Smith,* 218 Ark. 228, 235 S. W. 2d 886, that a deed like this one, if delivered, is a valid grant of a future interest, the quoted language merely reserving a life estate to the grantor. Here it is shown that the appellee agreed not to record the instrument until Lindsey's death, but this fact does not distinguish the case from our earlier decisions. Since the remainder interest passed upon delivery of the deed it makes no difference, as between the parties to the conveyance, whether the deed was ever placed on record." So here, the fact that possession of the land was reserved to the grantors for life does not defeat the passing of the title to appellee upon delivery of the deed which was shown by a preponderance of the evidence.

Affirmed.